CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 1 4 2009

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

|  |  |  |
|---|---|---|
| FRANCESCA RASI, | ) | |
| | ) | Civil Action No.: 7:08cv00203 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| | ) | By: Samuel G. Wilson |
| DEPARTMENT OF CORRECTIONS, | ) | United States District Judge |
| COMMONWEALTH OF VIRGINIA, | ) | |
| LARRY W. JARVIS, AND BENNY | ) | |
| ALLEN, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Francesca Rasi filed this action pursuant to Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e, et seq.) and 42 U.S.C. § 1983, alleging that while employed with the Department of Corrections, her supervisor Benny Allen digitally raped her, and after her father reported the incident, the Department of Corrections and the Commonwealth of Virginia ("the Department") retaliated against her by altering her work schedule, reprimanding her dress, and denying her vacation time. Rasi asserts sexual harassment and retaliation claims against the Department. She also asserts § 1983 claims and various state law torts against Benny Allen and Warden Larry A. Jarvis. Defendants have moved for summary judgment on all claims, except for Rasi's assault, battery, and false imprisonment claims against Allen. For the reasons that follow, the court denies the Department summary judgment on Rasi's sexual harassment claim, grants it summary judgment on Rasi's retaliation claim, denies Allen summary judgment, and grants Jarvis summary judgment.

# I.

The relevant facts, *construed in the light most favorable to Rasi*, are as follows:

Rasi began her employment at Bland Correctional Center ("Bland") around June 5, 2005. Bland has a workplace harassment policy that allows employees to "file a complaint with the agency human resource director, the agency head, their supervisor(s), or any individual(s) designated by the agency to receive such reports." During orientation, Virginia Bandy, Bland's Operations Officer, read and discussed Bland's workplace harassment policy with new employees. Rasi understood that any instances of sexual harassment should be reported by following the chain of command.

As a part-time employee, Rasi split her time between working in the Mail Room and the Food Service Department. Carrol Perdue, Food Operations Director, and Benny Allen, Food Operations Manager, directed Rasi in the Food Service Department. Rasi believed that Allen was her supervisor, and that Perdue was Allen's supervisor. Rasi was scheduled to begin work at 7:45 a.m., but she arranged a modification with Assistant Warden Gene Shinault because she had difficulties getting her children to school and occasionally arrived late.

In the Food Service Department, Allen directed Rasi's daily work, and approved her requests for time-off and early dismissal. The rare times Rasi spoke with Perdue were when Allen was absent. Rasi regarded Allen as her direct supervisor, and Jarvis himself considered Allen a supervisor. During the course of her employment in the Food Service Department, Allen began making vulgar, sexual comments to Rasi about her appearance and stated that he wanted to have sex with her. At one point, when Rasi was looking at a job posting for a permanent medical position, Allen told her he used to work at a strip club, and that the women who performed

2

sexual favors for Allen received better jobs. These comments made Rasi very uncomfortable, and she reported them to Perdue, who said he would speak with Allen. After this conversation, but before the alleged sexual battery, Allen touched Rasi's leg. Rasi reported this incident to Investigator Dillow, who then suggested that Rasi confront Allen about his behavior and threaten to approach Jarvis if Allen did not stop. Rasi confronted Allen, and he simply rebuffed her.

The prison scheduled a power outage for July 12, 2006. Rasi was not scheduled to work that day and had no knowledge of the power outage, but Allen asked her to work. When the outage began, Rasi and Allen were seated at Allen's computer in his office. Allen grabbed Rasi, and sexually battered her by digitally penetrating her vagina and touching her breasts. Rasi screamed and tried to escape. When someone knocked on the door, Allen let go of Rasi, and she left the office, walked out to the loading dock, and started smoking a cigarette. She testified that she was shocked: "It was like all the noise had just stopped, and I just had tunnel vision. I just–all I could see is him putting his hands all over me, and all I could hear is me begging for him to quit." (Rasi Dep. 142.) Minutes later, Allen walked outside, handed Rasi a Clorox pen, and told her to remove her makeup from his shirt. Rasi removed the makeup and went back inside the Food Service Department until the end of the day.

That evening, Rasi's father reported the incident to the prison. Two days later, Rasi met with Jarvis, Bandy, and Rick Hull, Human Resources Officer, and described the incident. Jarvis transferred Rasi to work under Bandy's supervision. Jarvis placed Allen on administrative leave for one month and prohibited him from contacting Rasi. When Allen returned on August 23, Jarvis reminded him that "[a]s a supervisor [he was] expected to be professional at all times." Despite this command, Allen began stopping by the Mail Room and would stare long enough at

3

Rasi for her to notice his presence. Rasi had other uncomfortable encounters with Allen. Each time she reported these encounters, Jarvis simply again admonished Allen to have no contact with Rasi.

Jarvis also referred the incident to the Special Investigations Unit, Office of the Inspector General. Special Agent James Wiandt thoroughly investigated all aspects of the alleged sexual battery and preceding sexual comments. He noted in his report that Allen alleged he gave Rasi $100 on July 13, 2006, the day after the alleged sexual battery. His report concluded that Allen's sexual comments violated the workplace harassment policy, but his results were inconclusive about the alleged sexual battery.

After Jarvis reassigned Rasi to work under Virginia Bandy's supervision, Bandy removed her flexible schedule. Rasi frequently arrived late, sometimes as late as 9:00 a.m., and according to Bandy, this practice "created an administrative burden on Bland" because other employees would need to cover the Mail Room. (Bandy Decl. ¶ 8.) As she would with any other employee, Bandy reprimanded Rasi and eventually disciplined her for tardiness. Bandy also reprimanded Rasi for wearing loose-fitting clothing in violation of Bland's dress code. Rasi additionally claims that Jarvis, in the presence of several witnesses, accused her of accepting money from Allen in exchange for the sexual encounter. Finally, in November 2006, Jarvis denied Rasi the vacation leave she requested for December 27-29, explaining that since she was part-time her role was to provide relief and additional coverage in the Mail Room during the holiday season. Rasi resigned shortly after this rejection. Rasi claims the alleged sexual battery has caused her severe emotional distress and a fear of males and heterosexual relationships.

Rasi now brings suit against the Department, Jarvis, and Allen. Against the

4

Department, Rasi asserts sexual harassment and retaliation claims under Title VII. Against Allen, Rasi asserts a § 1983 claim, and state law claims for intentional infliction of emotional distress, assault, battery, and false imprisonment. Against Jarvis, Rasi asserts a § 1983 claim, a state law claim for intentional infliction of emotional distress, and seeks to hold Jarvis vicariously liable for Allen's state law torts. Except for Rasi's assault, battery, and false imprisonment claims against Allen, the Defendants have moved for summary judgment on all claims.

## II.

The Department argues summary judgment[1] is appropriate as to Rasi's sexual harassment claim because Allen's alleged conduct cannot be attributed to it, and in any event, it has satisfied its Ellerth/Faragher affirmative defense. The Department argues summary judgment is also appropriate on Rasi's retaliation claim because it has offered legitimate, non-retaliatory reasons for its actions (the need to eliminate any administrative burdens in the Mail Room) that Rasi cannot prove are a pretext for retaliation. The court denies the Department summary judgment on Rasi's sexual harassment claim because it finds genuine issues of fact exist as to whether Allen's alleged conduct was aided by the agency relation, and whether the Department has satisfied its affirmative defense. The court grants the Department summary judgment on Rasi's

---

[1]Summary judgment is granted only "if the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). The court views the facts in the light most favorable to the non-moving party. See Lee v. York County Sch. Div., 484 F.3d 687, 693 (4th Cir. 2007). To withstand a summary judgment motion, the non-moving party must offer evidence from which a fair-minded jury could return a verdict for the party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). This standard applies to all of Rasi's claims.

5

retaliation claim because, even assuming Rasi can make out a prima facie case, she cannot prove the Department's proffered reasons were a pretext for retaliation.

## A.

The Department maintains Rasi has failed to establish a prima facie case of sexual harassment against it because Allen's alleged conduct was not "aided by the agency relation," a prerequisite for employer liability under Title VII. Even assuming Rasi can establish a prima facie case, the Department argues it has satisfied its affirmative defense under Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 765 (1998) and Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998) because it reasonably corrected the alleged harassing behavior, and Rasi acted unreasonably in failing to report promptly Allen's escalating harassment. The court finds genuine issues of material fact for trial and denies the Department's motion.

## 1.

A prima facie case of sexual harassment has four elements: (1) unwelcome conduct, (2) based on gender, (3) sufficiently pervasive or severe to alter the conditions of employment and to create a hostile work environment, and (4) some basis for imputing liability to the employer. Matvia v. Bald Head Island Mgmt., Inc., 259 F.3d 261, 266 (4th Cir. 2001). Rasi has marshaled evidence as to the first three, and the Department does not dispute this. See, e.g., Beardsley v. Webb, 30 F.3d 524, 528-29 (4th Cir. 1994) (holding that condescending language, inappropriate touching, and sexual innuendo are sufficient behavior to raise a triable issue). However, the Department argues Rasi cannot establish the fourth element because Allen's conduct was unaided by the agency relationship. According to the Department, since Allen could neither fire, promote, reassign, discipline, or review Rasi, nor alter her working conditions or increase her

6

pay, (Jarvis Aff. ¶ 5), Allen did not wield sufficient authority over Rasi for his conduct to have been "aided by the agency relation" as interpreted by the Fourth Circuit in <u>Mikels v. City of Durham</u>, 183 F.3d 323 (4th Cir. 1999). This argument reads <u>Mikels</u> too narrowly.

An employer is vicariously liable when a supervisor creates a hostile work environment that is "aided by the agency relation." <u>Ellerth</u>, 524 U.S. 742, 765 (1998); <u>Faragher</u>, 524 U.S. 775, 807 (1998); <u>see also</u> Restatement (Second) of Agency § 219(2)(d). The Fourth Circuit in <u>Mikels</u> elaborated on the meaning of "aided by the agency relation." In that case, Mikels, a police officer, brought a Title VII action against her employer, the City of Durham, after another officer attempted to kiss her. The offending officer was Mikels' superior in rank and had only the occasional authority to direct her conduct. She did not consider him her supervisor; rather, she believed her squad-leader sergeant was her direct supervisor. <u>Id.</u> at 326, 334. The Fourth Circuit affirmed summary judgment for the City because it found that the offending officer lacked sufficient supervisory authority over Mikels for his conduct to be aided by the agency relation.

According to the Fourth Circuit, a supervisor's conduct is aided by the agency relation if "as a practical matter his employment relation to the victim was such as to constitute a continuing threat to her employment conditions that made her vulnerable to and defenseless against the particular conduct in ways that comparable conduct by a mere co-worker would not." <u>Mickels</u>, 183 F.3d at 333. "The most powerful indicator" of such a relation is the supervisor's ability to engage in a tangible employment action, such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." <u>Id.</u> (citing <u>Ellerth</u>, 524 U.S. at 761). Absent that authority, the Fourth Circuit assumed without deciding that "lesser forms derived from the agency relation may aid

7

particular acts of supervisor harassment," and that in these "less clear circumstances," the victim's response is "highly probative on the issue whether any agency authority possessed by the harasser has actually aided his conduct by increasing her sense of vulnerability and defenselessness." Id. Under this framework, the court found that the offending officer's conduct was not aided by the agency relation because he could take no tangible employment action against Mikels, and his employment relationship with Mikels did not constitute a continuing threat because his occasional supervision did not preclude her from seeking protection from higher department officers. Further, she did not consider him a supervisor. Id. at 334.

The circumstances here stand in stark contrast. Allen was not just a superior in rank who occasionally supervised Rasi. Allen directed Rasi's day-to-day work assignments, approved medical visits and time-off, and exercised enough control over Rasi to compel her attendance on July 12, 2006.[2] Rasi believed Allen was her supervisor; she only spoke with Perdue when Allen was not present. Even Jarvis called Allen a "supervisor" in deposition testimony and in a memorandum dated August 23, 2006. A jury could conclude that Allen's sexual harassment was aided by the agency relation because his direct and exclusive control over Rasi's daily operations constituted a continuing threat to her employment conditions. The court therefore finds there is a genuine issue of material fact as to whether Allen's sexual harassment was aided by the agency

---

[2]These facts alone would raise a genuine issue of material fact if the court deferred to the EEOC Enforcement Guidelines because these guidelines define a "supervisor" as someone with "authority to direct the employee's daily work activities." EEOC Enforcement Guideline: Vicarious Liability for Unlawful Harassment by Supervisors (June 18, 1999) ("An individual who is temporarily authorized to direct another employee's daily work activities qualifies as his or her 'supervisor' during that time period. Accordingly, the employer would be subject to vicarious liability if that individual commits unlawful harassment of a subordinate while serving as his or her supervisor.").

relation.[3]

**2.**

Under Title VII, an employer is liable for sexual harassment when a supervisor takes a tangible employment action against a subordinate. Ellerth, 524 U.S. at 762-63. When no such action results,[4] the employer may raise an affirmative defense by proving by a preponderance of the evidence that "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Faragher, 524 U.S. at 807; Ellerth, 524 U.S. at 765. The court need not decide whether a tangible employment action resulted because it finds that genuine issues of fact exist under both prongs of the Ellerth/Faragher affirmative defense.

The Department argues it exercised reasonable care to prevent and correct promptly any sexually harassing behavior because Bland maintained a sexual harassment policy, and upon learning of the incident Jarvis reassigned Rasi, placed Allen on administrative leave, and prohibited Allen from communicating with Rasi. The mere promulgation of a sexual harassment

---

[3]Allen's conduct also might be imputed to the Department based on his apparent authority over Rasi. In Ellerth, the Supreme Court recognized vicarious liability under Title VII based on apparent authority: "If, in the unusual case, it is alleged there is a false impression that the actor was a supervisor, when he in fact was not, the victim's mistaken conclusion must be a reasonable one." Ellerth, 524 U.S. at 759. Rasi believed Allen was her direct supervisor. Allen's control over her daily assignments, and Jarvis's statements, would support a jury's conclusion that her beliefs were reasonable.

[4]"A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Ellerth, 524 U.S. at 761. In most cases, it "inflicts direct economic harm." Id. at 762.

9

policy is not enough; the policy "must be both reasonably designed and reasonably effectual." Brown v. Perry, 184 F.3d 388, 396 (4th Cir. 1999). Here, there is a genuine issue of material fact as to whether the Department exercised reasonable care to correct and prevent any future harassment because Allen allegedly continued to harass Rasi when he returned from administrative leave, and Jarvis responded each time by simply repeating his warning that Allen could not contact her.

To benefit from the affirmative defense the Department must also establish the second prong, that Rasi unreasonably failed to take advantage of Bland's corrective opportunities. The Department argues it can satisfy this prong because Rasi complained only to Allen, Perdue, and Dillow, none of whom were authorized to receive sexual harassment complaints. This argument ignores the specific language of Bland's workplace harassment policy and the accompanying explanation at its new employee orientation. The policy allows employees to "file a complaint with . . . their *supervisor(s)*," and Bandy routinely explained at orientation that a proper avenue for reporting sexual harassment complaints was "reporting to the person in the employee's respective chain of command . . . ." (Bandy Aff. ¶ 6.) A jury could conclude that Rasi, in reporting to Perdue and confronting Allen, did exactly what she reasonably believed was proper under Bland's policy: report her complaint up the chain of command to her immediate supervisors. Therefore, a jury could conclude that Rasi did not unreasonably fail to take advantage of the corrective opportunities that Bland provided.

## B.

Rasi also argues that the Department retaliated against her by removing her flexible schedule, reprimanding her for violating Bland's dress code, and denying her vacation time. The

10

Department argues that these actions do not constitute retaliation because they are not materially adverse, and there is no causal link between these actions and the alleged sexual battery because they occurred after Jarvis transferred Rasi to a different department. The Department also argues it has articulated legitimate, non-retaliatory reasons for these changes: namely, Bandy's need to eliminate the administrative burden Rasi created by arriving late, and Bandy and Jarvis's need for Rasi to provide relief and additional coverage during the holiday season. The court assumes without deciding that Rasi can establish a prima facie case of retaliation, but ultimately decides that the Department has articulated legitimate non-retaliatory reasons for its actions that Rasi cannot prove were a pretext for retaliation.

To establish a prima facie case of retaliation, Rasi must demonstrate that (1) she engaged in a protected activity, (2) her employer took an adverse employment action against her, and (3) the protected activity and the adverse employment action were causally connected. Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989). Once she establishes her prima facie case, the employer may rebut it by presenting evidence of a legitimate, non-retaliatory reason for the adverse action. Id. After the employer presents this evidence, the burden shifts back to the employee to show that the proffered reason is pretextual. Id.

Even if Rasi can establish a prima facie case of retaliation, she cannot show that the Department's reasons for reprimanding her and denying her vacation time were pretextual. Bandy has stated under oath that Rasi's continual tardiness created an administrative burden, and Bandy reprimanded and disciplined Rasi because it was Bandy's duty to ensure Rasi complied with the established rules and procedures. Further, both Bandy and Jarvis have stated under oath that they denied Rasi vacation time because "Rasi's primary duty was to provide relief for

11

Bland's Mail Room and because Rasi's assistance was necessary on December 27-29, 2006."
(Jarvis Aff. ¶ 13.) None of the evidence Rasi has marshaled suggests that these explanations are pretextual. Accordingly, the court grants summary judgment for the Department on Rasi's retaliation claim.

## IV.

Allen has moved for summary judgment on Rasi's § 1983 and intentional infliction of emotional distress claims against him. Allen argues Rasi cannot establish a § 1983 violation because he did not act under color of law and did not deprive her of any constitutional rights, and in any event, is entitled to qualified immunity. Allen also argues that Rasi has not marshaled evidence to support her intentional infliction of emotional distress claim. The court denies Allen summary judgment on Rasi's § 1983 claim because in the light most favorable to Rasi, the alleged sexual battery occurred under color of law and was so egregious and outrageous that it deprived Rasi of her substantive due process right to bodily integrity, a clearly established right. The court also denies Allen summary judgment on Rasi's intentional infliction of emotional distress claim because in the light most favorable to Rasi, her evidence establishes all the elements of that tort.

## A.

Allen's arguments that Rasi cannot establish a § 1983 violation and that he has qualified immunity lack merit. The court accordingly denies Allen summary judgment on Rasi's § 1983 claim.

## 1.

To establish a claim under 42 U.S.C. § 1983, Rasi must show that "(1) . . . the conduct

12

complained of was committed by a person acting under color of state law; and (2) . . . [the]

conduct deprived a person of rights, privileges, or immunities secured by the Constitution or law

of the United States." Parratt v. Taylor, 451 U.S. 527, 535 (1981). As the Third Circuit has

noted, "the essence of section 1983's color of law requirement is that the alleged offender, in

committing the act complained of, abused a power or position granted by the state."

Bonenberger v. Plymouth Twp., 132 F.3d 20, 24 (3d Cir. 1997). In Bonenberger, a police

dispatcher brought a § 1983 action against a sergeant for sexually harassing her during her

employment. The sergeant was not her official supervisor, but had exclusive control over the

dispatchers when no higher-ranking officer was on duty. During those times he completely

controlled the plaintiff's work environment by determining her assignments and break times. Id.

at 22. The Third Circuit simply found "no plausible justification for distinguishing between"

abuse of state authority by a formal supervisor and abuse of state authority by an actual, though

informal, supervisor. Id. at 23. Similarly, in the light most favorable to Rasi, because Allen

harassed Rasi with the authority to direct her daily work assignments, approve leave time, and

order her to work on the day of the alleged sexual battery, a jury could determine that Rasi has

properly established that Allen's sexual harassment was an abuse of his supervisory position, and

therefore occurred under color of law.

Rasi's complaint alleged a deprivation of four constitutional rights–the Fourth

Amendment right to be free from unlawful seizures, procedural due process, liberty interests, and

substantive due process–but the essential facts underlying her claim are that Allen digitally

penetrated her vagina. Her constitutional claim therefore boils down to a violation of her

substantive due process right to bodily integrity. See Jones v. Wellham, 104 F.3d 620, 628 (4th

13

Cir. 1997).[5]

Substantive due process under the Fourteenth Amendment guarantees the right to bodily

integrity.  Albright v. Oliver, 510 U.S. 266, 272 (1994) (Rehnquist, C.J.) (plurality opinion).

Conduct violates substantive due process guarantees when "the behavior of the governmental

officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary

conscience." County of Sacramento v. Lewis, 523 U.S. 833, 848 n.8 (1998).  This is never a pro

forma inquiry.  The Fourteenth Amendment is not a "font of tort law to be superimposed upon

whatever systems may already be administered by the states," id. at 848 (citations omitted), and

as such, a tort like simple battery does not shock the contemporary conscience.  Alexander v.

DeAngleo, 329 F.3d 912, 916 (7th Cir. 2003).  Several circuits, including the Fourth, agree that

rape is an example of egregious, outrageous conduct that violates substantive due process.  See

Jones v. Wellham, 104 F.3d 620, 622, 628 (4th Cir. 1997); see also Alexander, 329 F.3d at 916;

Rogers v. City of Little Rock, 152 F.3d 790, 793-96, 798 (8th Cir. 1998).  These circuits also

recognize that other sexual batteries can violate substantive due process.[6]

In the Eighth Circuit, not every inappropriate touching, even if accompanied by vulgar

---

[5]Rasi's allegation that Allen's alleged sexual battery constituted an unlawful seizure and
search in violation of the Fourth Amendment is incorrect.  Since "the harm inflicted did not
occur in the course of an attempted arrest or apprehension of one suspected of criminal conduct .
. . the claim [is] not one of Fourth Amendment violation." Jones v. Wellham, 104 F.3d 620, 628
(4th Cir. 1997) (internal citations omitted).

[6]See McWilliams v. Fairfax County Bd. of Supervisors, 72 F.3d 1191, 1197 (4th Cir.
1996), abrogated on other grounds by Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75
(1998) (finding substantive due process violation when employees forced a co-employee to his
knees, inserted a finger into his mouth, placed a broomstick next to his clothed buttocks, and
another employee exposed himself to the co-employee); Wudtke v. Davel, 128 F.3d 1057, 1059,
1063 (7th Cir. 1997) (finding substantive due process violation when superintendent forcibly
touched a teacher's breasts, kissed her, and coerced her into engaging in oral sex).

14

and sexual comments, violates a person's substantive due process right to bodily integrity. Hawkins v. Holloway, 316 F.3d 777, 785 (8th Cir. 2003). However, this right "may be violated by sexual fondling and touching or other egregious sexual contact." Haberthur v. City of Raymore, Mo., 119 F.3d 720, 723 (8th Cir. 1997). For example, in Haberthur, a plaintiff alleged that a uniformed police officer placed his hands underneath her sweatshirt, touched her chest and her breasts, touched her side and her neck, and told her to go to a back room with him. Id. at 721. The Eighth Circuit held that the plaintiff properly stated a substantive due process deprivation because the officer's conduct was "instrusive, demeaning, and violative of her personal integrity." Id. at 724.

Guided by this precedent, the court finds that Allen's alleged sexual battery violated Rasi's substantive due process right to bodily integrity. Rasi alleged that she "was raped (digitally)." (Comp. ¶6). She has testified that Allen digitally penetrated her vagina and touched her breasts against her will. This is not simply vulgar conduct. If true, it is akin to rape – it is a violation of Rasi's substantive due process right to bodily integrity. The court therefore rejects Allen's argument that Rasi has not alleged a substantive due process violation.

## 2.

Even if Rasi has properly alleged a substantive due process violation, Allen argues he is entitled to qualified immunity. Qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular

15

[government] conduct." Saucier v. Katz, 533 U.S. 194, 205 (2001). Thus, qualified immunity

protects all but the plainly incompetent or those who knowingly violate the law. Malley v.

Briggs, 475 U.S. 335, 341 (1986).

When a government official properly asserts qualified immunity, the threshold question

that a court must answer is whether the facts, when viewed in the light most favorable to the

plaintiff, show that the official's conduct violated a constitutional right. Saucier, 533 U.S. at 201.

"If no constitutional right would have been violated were the allegations established, there is no

necessity for further inquiries concerning qualified immunity." Id. However, "if a violation

could be made out on a favorable view of the parties' submissions, the next, sequential step is to

ask whether the right was clearly established"– that is, "whether it would be clear to a reasonable

officer that his conduct was unlawful in the situation he confronted." Id. at 201, 202.

Having already determined that, in the light most favorable to Rasi, Allen's alleged

sexual battery violated her substantive due process right to bodily integrity, the court turns to the

next sequential step of the qualified immunity analysis and answers the question of whether the

right was clearly established. At this step the court must determine whether the right alleged to

have been violated was a "clearly established ... right [] of which a reasonable person would have

known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "In determining whether a right was

clearly established at the time of the claimed violation, 'courts in this circuit [ordinarily] need not

look beyond the decisions of the Supreme Court, [the Fourth Circuit], and the highest court of the

state in which the case arose.'" Edwards v. City of Goldsboro, 178 F.3d 231, 251 (4th Cir.1999)

(quoting Jean v. Collins, 155 F.3d 701, 709 (4th Cir.1998) (en banc)). The court must conduct

the clearly established analysis "at a high level of particularity," Edwards, 178 F.3d at 251, but

16

the nonexistence of a case holding the defendant's identical conduct to be unlawful does not prevent denial of qualified immunity," id., because "qualified immunity was never intended to relieve government officials from the responsibility of applying familiar legal principles to new situations." Trulock v. Freeh, 275 F.3d 391, 409 (4th Cir. 2001); see also Wilson v. Layne, 526 U.S. 603 (1999) (holding that a right can be deemed clearly established even if there is no prior decision addressing the precise conduct at issue, so long as its illegality would have been evident to a reasonable officer on basis of existing caselaw). Thus, "'clearly established' in this context includes not only already specifically adjudicated rights, but those manifestly included within more general applications of the core constitutional principle involved." Pritchett v. Alford, 973 F.2d 307, 314 (4th Cir.1992).

The court determines that Rasi's substantive due process right to bodily integrity is clearly established. The Fourth Circuit, and others, agree that a rape violates the substantive due process guarantees of the Fourteenth Amendment. Jones, 104 F.3d at 628; Alexander, 329 F.3d at 916; Rogers, 152 F.3d at 793-96, 798. Although there is no prior decision addressing the precise conduct at issue, on the basis of existing precedent holding that rape violates substantive due process, the court finds that the illegality of forcibly penetrating a subordinate's vagina would have been evident to a reasonable superior. Accordingly, the court finds that, if Rasi's allegations are true, a substantive due process violation occurred, and the right violated was clearly established. Therefore, qualified immunity does not apply, and the court denies Allen summary judgment on Rasi's § 1983 claim.

**B.**

Allen argues that Rasi has marshaled insufficient evidence to support her state law claim

17

of intentional infliction of emotional distress. The court disagrees, and accordingly denies Allen summary judgment.

To recover for intentional infliction of emotional distress under Virginia law, Rasi must prove that (1) Allen acted intentionally or recklessly (2) his conduct was outrageous and intolerable (3) there is a causal connection between his wrongful conduct and Rasi's emotional distress and (4) that Rasi's emotional distress is severe. Russo v. White, 400 S.E.2d 160, 162 (Va. 1991). The evidence Rasi has marshaled concerning the initial harassment, the alleged sexual battery, the subsequent encounters, and her resulting emotional distress is sufficient for a reasonable jury to find Allen liable under intentional infliction of emotional distress.[7] See Swentek v. USAIR, Inc., 830 F.3d 552, 562 (4th Cir. 1987).

## V.

Rasi asserts claims against Jarvis under § 1983 for alleged constitutional violations, and she claims he committed the state law tort of intentional infliction of emotional distress and is vicariously liable for Allen's state law torts. Jarvis argues that Rasi has marshaled nothing to demonstrate that he violated her constitutional rights or committed the state law tort of intentional infliction of emotional distress and that he cannot be held vicariously liable for Allen's torts. The court agrees, and grants him summary judgment.

## A.

Rasi argues that Jarvis's handling of the alleged sexual battery constituted an independent

---

[7]Allen's argument that Rasi failed to sufficiently plead the emotional distress element as required under Virginia law ignores the fact that she filed her complaint in federal court, and need only comply with notice pleading under Federal Rule of Civil Procedure 8. Hatfill v. N.Y. Times Co., 416 F.3d 320, 327 (4th Cir. 2005).

18

deprivation of her constitutional rights in violation of § 1983. She has marshaled nothing to support that claim. The only constitutional claim Rasi's evidence raises is her substantive due process claim against Allen. To hold Jarvis liable, Rasi must prove three elements: (1) Jarvis had actual or constructive knowledge that Allen "engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury;'" (2) Jarvis's response "was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices;'" and (3) there was an "'affirmative causal link'" between Jarvis's inaction and Rasi's constitutional injury. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted). Rasi cannot prove these elements. She has marshaled no evidence that Jarvis knew or should have known of Allen's conduct before her father reported the alleged sexual battery, or that Jarvis failed to respond to prevent its reoccurrence. Accordingly, the court grants Jarvis summary judgment on Rasi's § 1983 claims.

### B.

Jarvis argues that summary judgment is appropriate on all of Rasi's state law claims because he cannot be vicariously liable for Allen's conduct, and Rasi has marshaled insufficient evidence for a reasonable jury to conclude his conduct constitutes intentional infliction of emotional distress. The court agrees, and accordingly grants Jarvis summary judgment on all state law claims.

To prevail on her claim of intentional infliction of emotional distress, Rasi must show that Jarvis's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Russo, 400 S.E.2d at 162 (internal citations omitted). The evidence does

19

not meet this standard. When Jarvis learned of the alleged sexual battery, he launched an independent investigation, reassigned Rasi, and placed Allen on administrative leave. His accusation that Rasi accepted money for the alleged encounter is based on the Special Investigations Unit report, and is therefore not "outrageous." Therefore, Jarvis is not liable for intentional infliction of emotional distress.[8]

Nor is Jarvis vicariously liable for Allen's conduct. Under the doctrine of respondeat superior, an employer is liable for the tortious acts of an employee performing the employer's business and acting within the scope of his employment. McDonald v. Hampton Training Sch. for Nurses, 486 S.E.2d 299, 300 (Va. 1997). Public officers are generally not vicariously liable for the actions of a subordinate unless the public officer appointed that subordinate. See First Va. Bank-Colonial v. Baker, 301 S.E.2d 8, 13 n.4 (Va. 1983) ("[A] public officer who appoints a deputy (*as distinguished from a mere assistant or subordinate*) is generally responsible for the latter's official acts, because the act of the deputy, by color of the principal's authority, is that of the principal himself . . . ." (emphasis added)). Jarvis is not vicariously liable for Allen's conduct because Allen was a mere assistant or subordinate. Accordingly, the court grants Jarvis summary judgment on all claims.

---

[8]Rasi has also asserted negligent infliction of emotional distress claims against Allen and Jarvis. The court grants Allen and Jarvis summary judgment on these claims. In Virginia, a party who did not suffer a physical impact may recover for negligent infliction of emotional distress only if the negligent conduct caused emotional distress accompanied by physical injury. Womack v. Eldridge, 210 S.E.2d 145, 147 (Va. 1974). Rasi's claim against Jarvis fails because she cannot prove physical injury resulted from his conduct. Rasi's claim against Allen also fails. The only physical injury Rasi claims allegedly resulted from the sexual battery. Either the sexual battery occurred and constituted intentional infliction of emotional distress, or it did not occur and Rasi cannot recover under negligent infliction of emotional distress because there is no physical injury.

## VI.

For the reasons stated, the court hereby **GRANTS** the Departments' Motion for Summary Judgment as to Rasi's retaliation claim, and Jarvis's Motion for Summary Judgment as to all claims against him. The court **DENIES** the Department's and Allen's Motions for Summary Judgment as to the remaining claims.[9]

**ENTER**: This _13th_ day of January, 2009.

UNITED STATES DISTRICT JUDGE

---

[9]The court notes that the facts recited in this opinion are essentially based on Rasi's disputed deposition testimony.

21